**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IBRAHIM KURTI, | : | Civil No. 1:19-cv-2109 |
| Petitioner, | : | |
| v. | : | |
| DOUGLAS WHITE, WARDEN, *et al.*, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

On December 11, 2019, Petitioner, Ibrahim Kurti, an inmate presently confined at the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania, filed the above captioned petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (Doc. 1.) Kurti claims that the Bureau of Prisons (BOP) violated his constitutional rights by not providing him proper time credits pursuant to the First Step Act (FSA), *see* 18 U.S.C. § 3632(b). (*Id.*) For relief, he seeks either a sentence reduction or placement in pre-release custody. (*Id.*) For the reasons that follow, the court will deny the petition for writ of habeas corpus.

### PROCEDURAL BACKGROUND

Following an order to show cause, Doc. 5, Respondent filed a response on January 31, 2020. (Doc. 7.) A traverse was filed on February 7, 2020, Doc. 8, and on April 1, 2020, Kurti filed an "Emergency Supplemental Argument for

Petitioner's Relief". (Doc. 9.) By Order dated April 1, 2020, the court ordered additional briefing on the petition and a response to the Petitioner's emergency supplemental argument. (Doc. 10.) On April 8, 2020, Respondent filed a supplemental brief. (Doc. 11.) Although provided an opportunity, Kurti has filed neither a reply, nor a motion seeking an extension of time to do so. Accordingly, the petition is ripe for disposition.

## FACTUAL BACKGROUND

A January 28, 2020 search of the Administrative Remedy Generalized Retrieval reveals that on May 23, 2019, Plaintiff filed Administrative Remedy No. 978345-F1 at LSCI-Allenwood, requesting 1,200 days of time credits for his prior institutional programming. (Doc. 7-2 at 7.)

By response dated June 3, 2019, Warden, D. K. White addressed Kurti's Administrative Remedy as follows:

> This is in response to your Request for Administrative Remedy received on May 23, 2019, where you request for consideration of pre-release credits addressed in accordance with the First Step Act.
>
> A review of your case revealed you arrived at the Low Security Correctional Institution, Allenwood, Pennsylvania, on November 15, 2018, as a Lesser Security Transfer from the Federal Correctional Institution, Allenwood, Pennsylvania. You were sentenced to a modified 276-month term for Conspiracy to Distribute and Possession w/Intent to Distribute Methlyenedioxy-Methamphetamine or "Ecstacy" and Conspiracy to Distribute and Possession w/Intent to Distribute Marijuana. You currently have a projected release date of December 3, 2022, via Good Conduct Time release procedures.

> At this time, not all components of the First Step Act have been addressed and acted upon by the Bureau of Prisons. As direction is provided all aspects will be reviewed and handled accordingly.
>
> Based on the aforementioned information, your Request for Administrative Remedy is for informational purposes only.
>
> In you are not satisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Streets, 7th Floor, Philadelphia, Pennsylvania, 19106, within 20 calendar days of this response.

(Doc. 7-2 at 12.) Kurti filed a timely appeal, Doc. 13, which was denied on July 17, 2019, as follows:

> You appeal the response of the Warden at LSCI-Allenwood regarding your request for pre-release custody. You contend you are entitled to a minimum of 1,200 pre-release credits based on your completed programming under the First Step Act (FSA). You request to be awarded the pre-release credits you seek.
>
> A review of your appeal reveals the FSA may result in additional credit for some inmates. However, we are unable to assess if you are entitled to any additional pre-release credits at this time. A Risk and Needs Assessment tool, which has not been released, will be used to determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each inmate to such programming accordingly. Eligible inmates who successfully complete evidence-based recidivism reduction programming or productive activities may be entitled to additional time credits. Until your programming is assessed pursuant to the Risk and Needs Assessment tool, and other aspects of the FSA are addressed, you are not entitled to additional pre-release credits. Accordingly, your appeal is denied.
>
> If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General

> Counsel, Federal Bureau of Prisons, 320 First Street, N.W. Washington, D.C. 20534, within 30 calendar days of the date of this response.

(Doc. 7-2 at 14.) Petitioner's timely Central Office Administrative Remedy Appeal, Doc. 7-2 at 15, was resolved on September 20, 2019, as follows:

> This is in response to your Central Office Administrative Remedy Appeal, wherein you request to be awarded pre-release credits based on your completed programming under the First Step Act.
>
> We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. The First Step Act allows eligible inmate to earn additional time credits for successfully participating in evidence-based recidivism reduction programming or productive activities. The Bureau of Prisons is currently in the process of implementing steps to comply with this legislation.
>
> Accordingly, this response is for informational purposes only.

(Doc. 7-2 at 17.)

On October 30, 2019, Kurti received an individualized assessment pursuant to the FSA. (Doc. 11-1 at 1.) Petitioner's assessment provided him with the minimum general (-12) and violent (-4) scores possible based on the programs he completed while in BOP custody. (*Id.*)

On December 11, 2019, Kurti filed the instant action in which he "believes that he is entitled to a minimum of one thousand two hundred fifty (1,250) pre-release credit days and a maximum of one thousand eight hundred seventy-five

(1,875) pre-release credit days, based on Petitioner completing nearly 10, 000 hours of 'Productive Activities" throughout his term of incarceration. (Doc. 1.) Based on the time credit Kurti believes he is entitled to, he requests the court to "[o]rder the Federal Bureau of Prisons to immediately transfer Petitioner to what is defined as 'Pre-Release Custody,' under 18 U.S.C. § 3624(B) and § 3624(G), which removes the limitations on the amount of time a prisoner, such as Petitioner, can spend in 'Pre-Release Custody'." (*Id.*)

On April 1, 2020, Kurti filed an "Emergency Supplemental Argument for Petitioner's Relief", in which contends that his brother, who is the primary caretaker for his parents, has tested positive for COVID-19 and is currently, under quarantine and unable to care for his parents. (Doc. 9.) As such, Kurti believes that "he is a prime candidate to be placed on immediate pre-release custody and Petitioner believes that if the court grants the allocation of both time credits and order to place Petition on immediate pre-release custody, justice will be properly executed as per the statutory guidelines of the FSA." (*Id.*)

**DISCUSSION**

Although there is no statutory exhaustion requirement attached to habeas petitions brought pursuant to 28 U.S.C. § 2241, a federal prisoner must exhaust his administrative remedies prior to filing a § 2241 petition. *See Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013); *Callwood v. Enos*, 230 F.3d 627, 634

(3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). This mandate "has developed through decisional law in applying principles of comity and federalism" to claims brought under § 2241. *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986). Giving an agency the opportunity to correct its errors is a central purpose of the exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The Supreme Court has explained that:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits).

*Id*. (citations and internal quotation marks removed). In order for a prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542.10 *et seq*., otherwise, the habeas petition should be dismissed. *Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981) (requiring federal prisoner to exhaust administrative remedies before bringing claim under § 2241). Exhaustion is not required, however, if there is no opportunity to obtain adequate redress; if the issue presented only pertains to statutory construction; or if the prisoner makes an affirmative showing of futility. *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Schandelmeier*, 819 F.2d at 53; *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

In this case, Kurti does not contend that exhaustion should be excused based on any of these factors. Instead, he argues that he has exhausted his administrative remedies. The record before the court establishes that while Kurti appealed Administrative Remedy No. 978345-F1 to final review before the Bureau of Prisons' Central Office, he did so prior to the implementation of the steps necessary to comply with the First Step Act legislation, as well as prior to receiving his October 30, 2019 individualized assessment. To the extent that Kurti disagreed with his October 30, 2019 individual assessment, his remedy was to file an administrative remedy appeal therefrom. *See Fortes v. Harding*, 19 F. Supp.2d 323, 325 (M.D. Pa. 1998) (holding that inmates are required to exhaust their "available administrative remedies **prior** to initiating a prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law") (emphasis added). Thus, Kurti has clearly failed to exhaust administrative remedies with respect to the time credit he requests in the instant petition. However, notwithstanding exhaustion, Kurti is not entitled to relief for the following reason.

The FSA charged the Attorney General with the development and public release of the Risk and Needs Assessment System (the "System") within 210 days of the enactment of the statute.[1] 18 U.S.C. § 3632. Following its development and

[1] The FSA was enacted on December 21, 2018. The FSA defines the risk and needs assessment tool as "an objective and statistically validated method through which information is collected and evaluated to determine--(A) as part of the intake process, the risk that a prisoner will

publication, the System is designed to be used to: determine an inmate's recidivism risk; assess the inmate's risk of violent or serious misconduct; determine the appropriate type and amount of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate; periodically reassess an inmate's recidivism risk; reassign an inmate to appropriate EBRR programs or productive activities ("PAs"); determine when to provide the inmate with incentives and rewards for successful participation in EBRR and PAs; and determine when the inmate is ready to transfer into prerelease custody or supervised release. 18 U.S.C. § 3632(a).

The System provides guidance on the type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs. 18 U.S.C. § 3632(b). The System is also intended to provide information on the best ways the BOP can tailor programs to the specific criminogenic needs of an inmate so as to effectively lower each inmate's risk of recidivism. 18 U.S.C. § 3632(b). The statute permits an eligible inmate who successfully completes EBRR programming or PAs to earn time credits to be applied toward time in prerelease custody or supervised release. 18 U.S.C. §

recidivate upon release from prison; (B) the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison; and (C) the periodic reassessment of risk that a prisoner will recidivate upon release from prison, based on factors including indicators of progress and regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3635.

3632(d)(4)(A). An eligible inmate who successfully completes EBRR programming or PAs may earn ten days of time credits for every thirty days of successful participation. *Id*. Additionally, an eligible inmate determined to be at minimum or low risk for recidivating who does not increase their risk of recidivism over two consecutive assessments may earn five days of time credits for every thirty days of successful participation in EBRR programs and PAs. *Id*.

The FSA explicitly precludes an inmate from earning time credits for EBRR programs the inmate successfully completed prior to the enactment of the First Step Act. 18 U.S.C. § 3632(d)(4)(B)(i).

Specifically, the FSA statute states in pertinent part:

> **Beginning on the date of enactment of this subsection,** the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such a date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

18 U.S.C. § 3621(h)(4) (emphasis added). However, these programs did not go into effect immediately. 18 U.S.C. § 3632(d)(4). The Attorney General was allowed 210 days after the First Step Act was enacted, on December 21, 2018, to develop and publish the Risk and Needs Assessment System, which the BOP was to use as a guide to implement the programs. 18 U.S.C. § 3632(a). The Attorney General

published the Risks and Needs Assessment System on July 19, 2019.[2] The BOP then had 180 days, or until January 15, 2020, to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. 18 U.S.C. § 3621(h).

In his petition for writ of habeas corpus, Kurti sets forth over thirty "Productive Activities" that he believes qualify for credit under the FSA. (Doc. 1 at 22.) However, because the completion dates for these programs range from 2004 through 2019, which is prior to the January 15, 2020 implementation of the FSA, they are not eligible for FSA credit. 18 U.S.C. §3632(d)(4)(B)(i). Accordingly, Kurti is not entitled to the relief requested in his petition for writ of habeas corpus.[3]

Consequently, because Kurti is not entitled to any additional time credit, his request in his emergency supplemental argument, requesting this court grant "the allocation of both time credits and the order to place petitioner on immediate release custody" is equally without merit.[4]

---

[2] The First Step Act of 2018: Risk and Needs Assessment System, accessible online at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf.

[3] Once again, if Kurti continues to believe that he is entitled to time credits for programming he has completed during his incarceration, he must address his request first through the BOP administrative grievance process.

[4] Kurti states in his emergency motion that he "does not intend to construe these arguments as a compassionate release request under 18 U.S.C. 3582(c)." Nonetheless, the court notes that if he were attempting to proceed under 18 U.S.C. § 3582(c), a habeas petition filed pursuant to Section 2241 would not be the proper procedural vehicle for such claim. A motion for compassionate release must be filed in the district of conviction, which, in Kurti's case, would be

## CONCLUSION

For the foregoing reasons, Kurti's petition for writ of habeas corpus will be denied for his failure to exhaust administrative remedies with respect to his October 31, 20019 individualized assessment, and because the FSA does not provide time credit for productive activities completed prior to January 15, 2020. Inasmuch as Kurti does not qualify for the time credit he seeks in his petition, his emergency supplemental argument for relief, based on that time credit, is also denied.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 29, 2020

the Southern District of New York. *See* 18 U.S.C. § 3582 and 4205(g). Additionally, as Respondent posits, the caregiver criteria for a compassionate release request is limited to an incapacitated or deceased caregiver of minor children, a spouse, or a registered partner. Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582 and 4205(g)* (Doc. 11-2 at 7-12.) Thus, under the BOP's Program Statement 5050.50, an incapacitated caregiver for an inmate's parent(s) is not listed as a situation or circumstance for which a request for compassionate release would be considered.